Brian S. King, #4610
Brent J. Newton, #6950
Samuel M. Hall, #16066
**BRIAN S. KING, P.C.**
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com
brent@briansking.com
samuel@briansking.com

Attorneys for Plaintiffs

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| P.L., and V.L.,<br><br>   Plaintiffs,<br><br>vs.<br><br>CIGNA HEALTH and LIFE INSURANCE COMPANY, and the SOUTH TEXAS COLLEGE of LAW HEALTHCARE BENEFITS PLAN<br><br>   Defendants. | COMPLAINT |

Plaintiffs P.L. and V.L., through their undersigned counsel, complain and allege against Defendants Cigna Health and Life Insurance Company ("Cigna") and the South Texas College of Law Healthcare Benefits Plan ("the Plan") as follows:

**PARTIES, JURISDICTION AND VENUE**

1. P.L. and V.L. are natural persons residing in Harris County, Texas. P.L. is V.L.'s father.

1

2. Cigna is an insurance company headquartered in Bloomfield, Connecticut and was the third-party claims administrator, as well as the fiduciary under ERISA for the Plan during the treatment at issue in this case.

3. The Plan is a self-funded employee welfare benefits plan under 29 U.S.C. §1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"). P.L. was a participant in the Plan and V.L. was a beneficiary of the Plan at all relevant times.

4. V.L. received medical care and treatment at Trails Carolina ("Trails") and Uinta Academy ("Uinta"). Trails is an outdoor behavioral health facility located in North Carolina and Uinta is a licensed residential treatment facility located in Cache County, Utah. Both Trails and Uinta provide sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems.

5. Cigna denied claims for payment of V.L.'s medical expenses in connection with her treatment at Trails and Uinta.

6. This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

7. Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions, because Cigna does business in Utah, and a significant portion of the treatment at issue took place in Utah. Moreover, litigating the case in Utah reduces the Plaintiffs' out of pocket expenses. Finally, in light of the sensitive nature of the medical treatment at issue, it is the Plaintiffs' desire that the case be resolved in the State of Utah where it is more likely their privacy will be preserved.

8. The remedies the Plaintiffs seek under the terms of ERISA and under the Plan are for the benefits due under the terms of the Plan, and pursuant to 29 U.S.C. §1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. §1132(a)(3) based on the Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), an award of prejudgment interest, and an award of attorney fees and costs pursuant to 29 U.S.C. §1132(g).

## BACKGROUND FACTS

### V.L.'s Developmental History and Medical Background

9. When V.L. was about twelve years old she told her parents that she had been sexually molested by an uncle. Following this incident, V.L.'s behaviors started to change. She became more confrontational and started pulling out her hair. She isolated herself in her room and started refusing to attend activities which she used to enjoy such as piano or martial arts.

10. V.L. developed a problem sleeping and began having auditory hallucinations. V.L. then started seeing a psychiatrist, her school performance continued to suffer, and she continued to act out aggressively.

11. In May of 2017, V.L. cut herself deeply on her arms and legs and was admitted to the hospital and began seeing a new psychiatrist. V.L. started doing better after her hospitalization but shortly afterwards she was sexually abused by a boy at school and expressed a desire to commit suicide and later attempted to do so by overdosing on pills.

12. V.L. later attempted once more to commit suicide by overdose, she started having intensive seizures, and was once again hospitalized. The seizures were so severe that she needed to be sedated and intubated. After she was released from the hospital V.L. also

admitted to using drugs and alcohol. V.L. was then admitted to Trails, an outdoor behavioral health program in North Carolina.

### Trails

13. V.L. was admitted to Trails on May 17, 2019.

14. In a letter dated May 5, 2020, Cigna denied payment for V.L.'s treatment at Trails. The letter, attributed to Liebe Gelman, M.D. offered the following justification for the denial:

   > The clinical basis for this decision is: Insufficient clinical information has been provided by the facility to support the medical necessity for admission and continued stay at Wilderness Therapy Program for Children and Adolescents level of care from 05/17/2019 – 08/15/2019. Sufficient information such as an admission assessment, all physician, nursing and program/sessions notes, medication records, a treatment plan and a discharge summary has not been provided to explain why the current treatment could not have occurred at a less restrictive level of care. In addition, based upon current available information, coverage for the requested service cannot be approved because there is insufficient scientific evidence to demonstrate the safety and/or effectiveness of Wilderness Therapy Programs. At the present time, per Cigna Coverage Policy Complementary and Alternative Medicine (0086), this treatment falls under the category of experimental/investigational/unproven. Your benefit plan does not cover experimental/investigational/unproven services.

15. In an undated letter, P.L. appealed the denial of payment for V.L.'s treatment at Trails. P.L. reminded Cigna of its obligations under ERISA, including its responsibility to utilize an appropriately qualified reviewer and its mandate to provide him with a full, fair, and thorough review. P.L. requested a reviewer with a sub-specialization in V.L.'s diagnoses and with MHPAEA experience to help assess compliance with the statute.

16. P.L. included a summary of V.L.'s history and wrote that she had been diagnosed with several mental health problems including:

   F43.12:  Posttraumatic Stress Disorder
   F41.1:   Generalized Anxiety Disorder
   F63.3:   Trichotillomania[1]

---

[1] Trichotillomania is a body focused repetitive disorder in which the sufferer compulsively pulls out their hair and eyelashes.

> F33.1: Major Depressive Disorder, Recurrent, Moderate
> R41.844: Executive Function Deficits

17. P.L. argued that V.L.'s treatment was appropriate for her needs and included letters of medical necessity from V.L.'s treatment providers recommending that V.L. receive intervention at the residential treatment level of care to deal with her trauma, poor coping skills, self-harming behaviors, mental health conditions, and drug abuse. P.L. asked Cigna to elaborate on what basis it disagreed with the mental health professionals who had treated V.L. on a first-hand basis.

18. In a letter dated September 15, 2020, Cigna upheld the denial of V.L.'s treatment at Trails. The letter stated that, "After reviewing the appeal submitted by (Name of Party appealing on behalf of Customer)" [sic] the original decision to deny was upheld. In spite of ERISA's express prohibition on using a reviewer who was previously involved in the denial process, Cigna once more relied on Liebe Gelman, M.D. to conduct the review. Dr. Gelman concurred with his own May 5, 2020, decision to deny care and in fact appears to have simply copy and pasted the previous decision nearly verbatim. The decision, now stated to have been made on September 15, 2020, stated in part:

> Based upon the available clinical information received initially and with this appeal, insufficient clinical information has been provided by the facility to support the medical necessity for admission and continued stay at Wilderness Therapy Program for Children and Adolescents level of care from 05/17/2019 – 08/15/2019. Sufficient information such as an admission assessment, all physician, nursing, program and session notes, laboratory reports, medication records, a treatment plan and a discharge summary has not been provided to explain why the current treatment could not have occurred at a less restrictive level of care. In addition, based upon current available information, coverage for the requested service cannot be approved because there is insufficient scientific evidence to demonstrate the safety and/or effectiveness of Wilderness Therapy Programs. At the present time, per Cigna Coverage Policy Complementary and Alternative Medicine (0086), this treatment falls under the category of experimental/investigational/unproven. Your benefit plan does not cover

experimental/investigational/unproven services. Therefore, the initial determination is upheld.

**Uinta**

19. V.L. was admitted to Uinta on August 19, 2019, with Cigna's approval.

20. In a letter dated September 4, 2019, Cigna denied payment for V.L.'s treatment from August 30, 2019, forward. The letter gave the following justification for the denial:

    > Based upon the available information, your symptoms do not meet the Cigna Behavioral Medical Necessity Criteria for Residential Mental Health Treatment for Children and Adolescents for continued stay from 08/30/2019 forward, as there is no medical or psychiatric intervention necessary that requires the round-the-clock monitoring of a residential program. You are not requiring access to nursing care around-the-clock. You are not clearly demonstrating a need for active treatment in a 24-hour supervised setting. Less restrictive levels of care are available for safe and effective treatment.

21. Cigna also issued a series of Explanation of Benefits ("EOB") statements which denied care under separate rationales.

22. On July 16, 2020, P.L. submitted a level one appeal of the denial. He reminded Cigna of the protections he was guaranteed under ERISA, including the right to a full, fair, and thorough review using appropriately qualified reviewers which took into account all of the information he provided, a review which referenced the policy language on which the denial was based, and which gave him the information necessary to perfect the claim. P.L. additionally stated that ERISA required Cigna to act in his best interest.

23. P.L. requested that Cigna conduct a parity analysis of the Plan and that it provide him with a copy of the results of this analysis as well as physical copies of any and all documentation used, including copies of Cigna's criteria for intermediate level mental health care and intermediate level medical or surgical care such as skilled nursing facilities. P.L. stated that he was entitled to these materials under MHPAEA.

24. P.L. contended that Cigna had provided him with a series of contradictory denial rationales that it capriciously "simply invented… in order to find any excuse to avoid paying for [V.L.]'s treatment at Uinta." P.L. summarized the various denial EOB's he had received in the following table:

| Dates of Service | Denial Reason |
|---|---|
| 11/01/2019 – 11/15/2019, 12/16/2019 – 12/31/2019 | ZDQ – ADDITIONAL INFORMATION REQUIRED: PROVIDER, PLEASE SUBMIT MEDICAL RECORDS AND AN ITEMIZED HOSPITAL BILL WITH A COPY OF THIS REQUEST.<br><br>X91 – WE REQUESTED THIS INFORMATION WITH NO RESPONSE. WE MUST CLOSE OUR FILE. IF THE INFORMATION IS SUBMITTED WE WILL RECONSIDER THIS CLAIM. |
| 11/15/2019 – 11/30/2019 | VL4 – SERVICE NOT COVERED DOES NOT MEET YOUR PLAN'S DEFINITION FOR MEDICALLY NECESSARY CARE OR TREATMENT. |
| 12/01/2019 – 12/15/2019 | UM1 – UNITS EXCEED A UTILIZATION MANAGEMENT AUTHORIZATION. |
| 01/01/2020 – 01/15/2020, 01/16/2020 – 01/31/2020, 02/01/2020 – 02/15/2020, 02/16/2020 – 02/29/2020, 05/01/2020 – 05/15/2020, | XSK – THE SERVICES BILLED WERE NOT THE SERVICES AUTHORIZED. PLEASE SUBMIT CORRECTED BILLING. |
| 03/01/2020 – 03/15/2020 | XU4 – NON-COVERED SERVICE WAS NOT PRE-AUTHORIZED AS REQUIRED BY THE PLAN. |

25. P.L. contended that the denials he had received were clearly made in error. He stated that despite Cigna's claim that it required additional information, he had submitted the requested documents on multiple occasions and had proof that they had been successfully delivered. P.L. stated that V.L.'s treatment had been billed in the same manner

7

throughout the duration of her stay. As a result, contrary to Cigna's assertions, the services billed were in fact the services authorized, as no changes had been made.

26. He argued that V.L.'s treatment was medically necessary as Cigna itself had determined when it approved the initial portions of her treatment and that for Cigna to deny payment based partially on a lack of preauthorization when it had clearly authorized these services was arbitrary, capricious, inappropriate, and a complete disregard of Cigna's fiduciary duty.

27. P.L. included letters of medical necessity with the appeal. In a letter dated December 2, 2019, Casey deGroot, LPC wrote in part:

> The recommendation[s] are for [V.L.] to continue treatment at a longer-term residential treatment program. This needs to be a place that can support [V.L.] in choosing healthy behaviors, thought patterns and address the significant trauma work. She needs the high level of support and consistent environment to continue this upward trajectory.

Shalene Pierce, MSW, LMSW wrote in a letter dated November 22, 2019:

> Based on my clinical assessment, recommendations based on psychological testing, and our clinical director's review, it is determined that [V.L.] needs to continue her treatment in a residential treatment center to address all her medical, mental health, and educational needs at this time. [V.L.] has established a long standing, well engrained pattern of impulsive decisions, substance abuse, self-harm and destructive coping. At this time, [V.L.] requires a higher level of care and without treatment at the level of a residential treatment center, [V.L.] will not be safe.

Diana Handy, MS, CMHC, and Bret Marshall, MD, wrote in a letter dated May 4, 2020:

> The cumulative effects of early trauma, coupled with severe depression and anxiety, made it necessary for [V.L.] to receive residential treatment. Outside a therapeutic environment, she would not have had sufficient structure and supervision to stop the unhealthy behaviors that led to her near-fatal suicide attempt, and she required intensive daily treatment to gain new skills. This level of supervision and support also allowed her to come out of "survival mode" and begin to recognize and cope with her emotions, identify the negative beliefs about herself that contribute to her depression and anxiety, and begin to practice new skills in a safe environment. …

> At Uinta, [V.L.] receives 24-hour monitoring and support, including during school hours. [V.L.]'s school participation has improved with the added structure and care. It is our opinion that [V.L.]'s needs could not be met outside of a structured residential treatment setting.
>
> It is vital that [V.L.] complete residential treatment for these issues to avoid their continuation and escalation into her adulthood, putting her at risk of severe mental health, emotional, social, and safety consequences. It is the opinion of the Uinta Academy treatment team that [V.L.] requires continued residential treatment to address her specific needs and challenges. She has shown great improvement at this level of care, and there is every indication that following this period of intensive treatment she will be able to maintain her mental health with outpatient support.

Todd Corelli, Ph.D., LPC, wrote in part in psychological evaluation dated July 3, 2019:

> One of the ways [V.L.] has tried to manage her emotions has been through drug use. She reported that she first began using Xanax in November 2018 and used it "two to four times every few days." She started using cocaine in December 2018 and used it approximately once or twice a week. [V.L.] also experimented and used other drugs, including nicotine, marijuana, prescription pain medication, ecstasy, and alcohol. …
>
> [I]t is strongly recommended that following her stay at Trails, [V.L.] go directly on to a longer-term residential treatment program that can address each of these issues in depth.

28. P.L. stated that it was the opinion of all of medical professionals that had treated V.L. in person that her treatment at Uinta was medically necessary. P.L. again asked Cigna to specify on what basis it disagreed with the treatment providers who had worked with V.L. on a first-hand basis.

29. P.L. asked in the event the denial was upheld that he be provided with a copy of all documents under which the Plan was operated, including: all governing plan documents, the summary plan description, any insurance policies in place for the benefits he was seeking, and any administrative service agreements that existed.

30. In addition, to assess the Plan's MHPAEA compliance, he asked for the Plan's clinical guidelines and medical necessity criteria used to evaluate the claim, as well as their medical/surgical equivalents. In particular, he requested the criteria for skilled nursing, inpatient rehabilitation, and hospice facilities. He also asked to be provided with any existing reports from any physician or other professional concerning the claim.

31. P.L. asked that if Cigna was not in possession of these materials or was not acting on behalf of the Plan Administrator in this regard that it forward his request to the appropriate entity.

32. In a letter dated August 27, 2020, Cigna upheld the denial of payment for V.L.'s treatment. The letter did not reference the Plaintiffs' appeal and instead stated that "After reviewing the appeal submitted by Uinta Academy, the original decision to deny… is upheld." It is unclear whether the reference to an appeal from Uinta Academy appeal, rather than an appeal from P.L., was made in error or whether Cigna's denial refered to a separate unrelated appeal and the Plaintiffs' appeal was never reviewed. In either event, the letter gave the following justification for the denial:

> Based upon the available information received initially and for this appeal, your symptoms did not meet Behavioral Medical Necessity Criteria for continued stay at Residential Mental Health Treatment for Children and Adolescents from 08/30/2019 – 01/28/2021. Though you had symptoms of depression and anxiety, you were not having thoughts of harming yourself or others. You were in behavioral control. There had been no recent changes in your medication. There were no therapeutic interventions that could not have taken place at a less restrictive level of care. Appropriate lower levels of care were available for safe and effective treatment. Therefore, the initial determination is upheld.

33. Cigna did not provide the documents P.L. requested in his appeal letter.

34. The Plaintiffs exhausted their pre-litigation appeal obligations under the terms of the Plan and ERISA.

35. The denial of benefits for V.L.'s treatment was a breach of contract and caused P.L. to incur medical expenses that should have been paid by the Plan in an amount totaling over $215,000.

## FIRST CAUSE OF ACTION

### (Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B))

36. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as Cigna, acting as agent of the Plan, to discharge its duties in respect to claims processing solely in the interests of the participants and beneficiaries of the Plan. 29 U.S.C. §1104(a)(1).

37. Cigna and the Plan failed to provide coverage for V.L.'s treatment in violation of the express terms of the Plan, which promise benefits to employees and their dependents for medically necessary treatment of mental health and substance use disorders.

38. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with the Plaintiffs in the pre-litigation appeal process. 29 U.S.C. §1133(2).

39. The denial letters produced by Cigna cast serious doubt on whether any meaningful analysis of the Plaintiffs' appeals was conducted or whether it provided them with the "full and fair review" to which they are entitled.

40. In its denial letters for Trails, not only did Cigna reuse the same reviewer to evaluate the decision to deny care in spite of ERISA's explicit prohibition against such a practice, but it also left in placeholder template language and recycled its original denial rationale almost word-for-word without addressing any of the arguments P.L. raised in his appeal.

11

41. With regards to Uinta, Cigna issued a slew of contradictory denials, leading P.L. to assert in his appeal letter that Cigna was masking its true justifications for denying care and acting in an arbitrary and capricious manner contrary to its fiduciary duty.

42. In addition, Cigna's denial response to the Plaintiffs' only permitted internal appeal for Uinta not only did not address any of the arguments raised in P.L.'s appeal, but also stated that it was submitted in response to a facility appeal, making it unclear whether the Plaintiffs' appeal was reviewed by Cigna at all.

43. Cigna and the agents of the Plan breached their fiduciary duties to V.L. when they failed to comply with their obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in V.L.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of V.L.'s claims.

44. The Defendants' actions in failing to provide coverage for V.L.'s medically necessary treatment are a violation of the terms of the Plan and its medical necessity criteria.

## SECOND CAUSE OF ACTION

### (Claim for Violation of MHPAEA Under 29 U.S.C. §1132(a)(3))

45. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and MHPAEA. The obligation to comply with both ERISA and MHPAEA is part of Cigna's fiduciary duties.

46. Generally speaking, MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

47. MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits and also makes illegal separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C.§1185a(a)(3)(A)(ii).

48. Impermissible nonquantitative treatment limitations under MHPAEA include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity; refusal to pay for higher-cost treatment until it can be shown that a lower-cost treatment is not effective; and restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A), (F), and (H).

49. The medical necessity criteria used by Cigna for the intermediate level mental health treatment benefits at issue in this case are more stringent or restrictive than the medical necessity criteria the Plan applies to analogous intermediate levels of medical or surgical benefits.

50. For example, the level of care applied by Cigna failed to take into consideration the patient's safety if she returned to a home environment, as well as the risk of decline or relapse if less intensive care than what was medically necessary was provided. P.L. included letters of medical necessity with the appeal which showed that V.L. was at very high risk of harm if she were prematurely discharged.

51. Generally accepted standards of medical practice for medical and surgical rehabilitation under the Plan take into consideration safety issues and considerations of

preventing decline or relapse when admission into an intermediate care facility, such as a skilled nursing or rehabilitation facility, is approved.

52. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for V.L.'s treatment include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities. For none of these types of treatment does Cigna exclude or restrict coverage of medical/surgical conditions by imposing restrictions such as an acute care requirement for a sub-acute level of care. To do so, would violate not only the terms of the insurance contract, but also generally accepted standards of medical practice.

53. When Cigna and the Plan receive claims for intermediate level treatment of medical and surgical conditions, they provide benefits and pay the claims as outlined in the terms of the Plan based on generally accepted standards of medical practice. Cigna and the Plan evaluated V.L.'s mental health claims using medical necessity criteria that deviate from generally accepted standards of medical practice. This process resulted in a disparity because the Plan denied coverage for mental health benefits when the analogous levels of medical or surgical benefits would have been paid.

54. While the denial letters produced by Cigna offer little context for Cigna's rationale to deny payment beyond three or four sentences, one of the few justifications offered for the denial was a statement that, "you were not having thoughts of harming yourself or others"

55. A requirement of thoughts of harm to self or others is an acute level requirement. This improper use of acute inpatient criteria was a nonquantitative treatment limitation that cannot permissibly be applied to evaluate the sub-acute level of care that V.L. received.

    The Plan does not require individuals receiving treatment at sub-acute inpatient facilities for medical/surgical conditions to satisfy acute medical necessity criteria in order to receive Plan benefits.

56. In addition, part of the rationale for Cigna's denial identified in its denial letters was, "[y]ou are not clearly demonstrating a need for active treatment in a 24-hour supervised setting." The requirement that the Plaintiffs "clearly demonstrate," as opposed to show by a preponderance of the medical information available, that the treatment at Uinta was medically necessary reveals a significant disparity with the information Cigna requires for treatment in analogous levels of medical and surgical care to be approved for payment.

57. The treatment provided in an acute care environment is necessarily distinct from treatment provided in a non-acute environment. Utilizing acute criteria to evaluate a non-acute claim will result in a near universal denial of benefits, regardless of the medical necessity, clinical appropriateness, or nature of the treatment.

58. The Defendant cannot and will not deny that use of acute care criteria, either on its face or in application, to evaluate sub-acute treatment violates generally accepted standards of medical practice. They must and do acknowledge that they adhere to generally accepted standards of medical practice when they evaluate the medical necessity criteria of both mental health/substance use disorders and medical/surgical claims.

59. In this manner, the Defendants violate 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Plan and the medical necessity criteria utilized by the Plan and Cigna, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and

more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

60. Cigna and the Plan did not produce the documents the Plaintiffs requested to evaluate medical necessity and MHPAEA compliance, nor did they produce the other documents the Plaintiffs requested.

61. The violations of MHPAEA by Cigna and the Plan are breaches of fiduciary duty and also give the Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

   (a) A declaration that the actions of the Defendants violate MHPAEA;

   (b) An injunction ordering the Defendants to cease violating MHPAEA and requiring compliance with the statute;

   (c) An order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by the Defendants to interpret and apply the terms of the Plan to ensure compliance with MHPAEA;

   (d) An order requiring disgorgement of funds obtained by or retained by the Defendants as a result of their violations of MHPAEA;

   (e) An order requiring an accounting by the Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of the Defendants' violations of MHPAEA;

   (f) An order based on the equitable remedy of surcharge requiring the Defendants to provide payment to the Plaintiffs as make-whole relief for their loss;

   (g) An order equitably estopping the Defendants from denying the Plaintiffs' claims in violation of MHPAEA; and

(h) An order providing restitution from the Defendants to the Plaintiffs for their loss arising out of the Defendants' violation of MHPAEA.

62. In addition, Plaintiffs are entitled to an award of prejudgment interest pursuant to U.C.A. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g)

WHEREFORE, the Plaintiffs seek relief as follows:

1. Judgment in the total amount that is owed for V.L.'s medically necessary treatment at Trails and Uinta under the terms of the Plan, plus pre and post-judgment interest to the date of payment;

2. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) as outlined in Plaintiffs' Second Cause of Action;

3. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

4. For such further relief as the Court deems just and proper.

DATED this 30th day of July, 2021.

By    s/ Brian S. King
      Brian S. King
      Attorney for Plaintiffs

County of Plaintiffs' Residence:
Harris County, Texas